UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

KATHERINE GAUTIER AND
DON BARCELONA                                           CIVIL ACTION

V.                                                      NO. 18-1435

BACTES IMAGING SOLUTIONS, LLC                           SECTION "F"

ORDER AND REASONS

Before the Court are the defendants' motions to dismiss the complaint and compel arbitration, or in the alternative, dismiss the case pursuant to Rule 12(b)(6). For the following reasons, the motions are GRANTED in part, to the extent it seeks to compel arbitration, and DENIED in part, to the extent it seeks dismissal rather than a stay.

**Background**

This lawsuit arises out of an employee's claim that she was sexually harassed by her employer. This litigation followed.

On February 1, 2016, Katherine Gautier was hired as a sale representative at Bactes Imaging Solutions, Inc., a company owned and operated by Sharecare Company. Joseph Paulus, the regional sale manager for Bactes, was Gautier's immediate supervisor. On February 12, 2018, Gautier and her husband Don Barcelona sued Bactes[1] and Paulus alleging violations of Title VII and the Family

---

[1] Initially, the plaintiffs incorrectly named Sharecare as the defendant instead of Bactes. Bactes has been substituted as the correct defendant.

1

and Medical Leave Act. Gautier alleges that Paulus sexually harassed her by making sexual comments to her in person and sending her inappropriate texts and emails. She further alleges Paulus retaliated against her for refusing his sexual advances. Gautier also alleges that Bactes ratified Paulus' conduct and itself engaged in discriminatory conduct. She claims that this workplace abuse caused depression, and at the time of the complaint's filing, she had been on leave for fourteen weeks for her emotional condition. Gautier adds claims that the defendants violated her rights under the Family and Medical Leave Act by asking her work-related questions while she was on leave. Don Barcelona alleges that as a result of the defendants' abusive and discriminatory treatment of his wife, he has lost the "society, services, and companionship of his wife," and is entitled to recover damages.

On May 31, 2018, Bactes moved to compel arbitration, or in the alternative, to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). And on June 1, 2018, Paulus moved to compel arbitration, or in the alternative, to dismiss the complaint. Gautier opposed the motions on August 14, 2018, but Barcelona did not separately submit an opposition.[2]

---

[2] Gautier and Barcelona were initially represented by the same attorneys. On June 12, 2018, the plaintiffs' moved to withdraw their counsel from representation, and also moved to continue the submission date for the pending motions to compel arbitration until August 22, 2018 so the plaintiffs could obtain new counsel. The

2

I.

There is a "strong federal policy in favor of enforcing arbitration agreements." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 217 (1985). The Federal Arbitration Act states that: "If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration. . . the court. . . shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement. . . ." 9 U.S.C. § 3. The FAA requires district courts to "compel arbitration of otherwise arbitrable claims, when a motion to compel arbitration is made." Sedco, Inc. v. Petroleos Mexicanos Mexican Nat'l Oil Co., 767 F.2d 1140, 1147 (5th Cir. 1985).

Courts undertake a two-step inquiry when considering motions to compel arbitration. Washington Mut. Finance Group v. Bailey, 364 F.3d 260, 263 (5th Cir. 2004). The first step requires a finding that the parties agreed to arbitrate the dispute at issue. Id. Second, upon such a finding, the Court must consider whether any federal statute or policy renders the claims nonarbitrable. Id.

The first determination requires two considerations: "(1) whether there is a valid agreement to arbitrate between the

---

Court granted both motions. Gautier obtained counsel, but Barcelona has not.

3

parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." Webb v. Investacorp, Inc., 89 F.3d 252, 257–58 (5th Cir. 1996). While state law governs the first consideration, "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself must be resolved in favor of arbitration." Id. at 258.

II.

Gautier signed an arbitration agreement on January 24, 2016, shortly before she began working for Bactes. A company representative also signed the agreement. The agreement provides, in part:

> In the event of any dispute arising under or involving any provision of this agreement or any dispute regarding the undersigned employee (hereinafter referred to as an Employee), employement with BACTES Imaging Solution, Inc. (hereinafter referred to as BACTES), or the termination of employment . . . . **Employee and BACTES agree to submit any such dispute to binding arbitration pursuant to the provisions of the Federal Arbitration Act**, U.S.C. section 1, *et seq.*, if applicable.
>
> . . .
>
> Arbitration proceedings shall be held in California at a location mutually convenient to the Employee and BACTES.
>
> . . .
>
> **Employee and BACTES agree that arbitration shall be the exclusive forum for resolving all disputes arising out of or involving Employee's employment with BACTES** or the termination of that employment (with the exception of claims

>     for workers' compensation, unemployment insurance and any
>     matter within the jurisdiction of the California Labor
>     Commissioner) . . . .

(Emphasis added). Bactes seeks to enforce the agreement against both Gautier and Barcelona. (Barcelona is not a signatory to the agreement.) Paulus, Gautier's supervisor, also seeks to compel arbitration, although he too is not a signatory to the agreement. The enforceability of the arbitration agreement against Gautier and Barcelona, and Paulus's right to compel arbitration, are addressed in turn.

### A.

Gautier opposes the motion, but Barcelona has not submitted an opposition. Accordingly, Gautier's contentions will be addressed first. Gautier asserts that the first step of the inquiry, that the parties agreed to arbitrate the dispute at issue, cannot be met because there is not a valid agreement. She alleges that the agreement is invalid because the choice of forum provision violates Louisiana law and because it is unconscionable. Both reasons are without merit, and fail.

Gautier contends that the agreement is invalid because it contains a choice of forum clause, which is prohibited by Louisiana law. The arbitration agreement does state that "[a]rbitration proceedings shall be held in California . . . ." However, Louisiana law prohibits an employment agreement from containing a choice of

forum clause unless the clause is "agreed to and ratified by the employee after the occurrence of the incident which is the subject of the civil or administrative action." La. R.S. 23:921(A)(2).

The defendants contend that the FAA directly contradicts the Louisiana statute, and therefore preempts it. The Court agrees. In Southland Corp. v. Keating, the Supreme Court held that the FAA preempted a California law that precluded the enforceability of arbitration laws that were enforceable under the FAA. Southland Corp. v. Keating, 465 U.S. 1 (1984). The Court recognized that the FAA applies to states, and does not permit "state legislative attempts to undercut the enforceability of arbitration agreement." Id. Similarly, the Fifth Circuit has held that the FAA preempted a Louisiana statute declaring certain contractual forum selection clauses "null and void." OPE Int'l LP v. Chet Morrison Contractors, Inc., 258 F.3d 443, 447 (5th Cir. 2001). The Fifth Circuit determined that the Louisiana statute "directly conflicts with § 2 of the FAA because the Louisiana statute conditions the enforceability of arbitration agreements on selection of a Louisiana forum . . . ." Id. Likewise, the FAA also preempts the Louisiana statute at issue here, La. Rev. Stat. 23:921(A)(2), which similarly conditions the enforceability of an arbitration agreement on the omission of a forum selection clause. Because La. Rev. Stat. 23:921(A)(2) improperly imposes conditions upon the enforceability of an enforcement agreement, it is preempted by the

6

FAA. Sherman v. RK Restaurant Holdings, Inc., 2014 WL 4540023, at *7 ("Therefore, LA.REV.STAT. § 23:921 directly conflicts with Section 2 of the FAA . . . . Thus, the FAA preempts LA.REV.STAT. § 23:921 . . . ."). The forum selection clause does not render Bactes' arbitration agreement unenforceable.

Gautier also contends that the agreement is invalid because it is unconscionable. She asserts that she had no power to negotiate the contract because she did not have the opportunity to rewrite the handbook. She also alleges it is unconscionable because she could not have given consent to the agreement because the adverse party was her prospective employer and she had to sign it to be employed. Essentially, she alleges that the power dynamic was too skewed in favor of Bactes that she could not have consented. The Louisiana Supreme Court has established a framework for determining whether adhesion contracts—printed contracts "prepared by a party of superior bargaining power for adherence or rejection of the weaker party"—were actually consented to by the weaker party and therefore enforceable. Aguillard v. Auction Management Corp., 2004-2804 (La. 6/29/05); 908 So.2d 1, 8-9. In Aguillard, the plaintiff challenged whether he could have consented to the arbitration agreement with the defendant, an auctioneer, which was signed at an auction for property. The plaintiff asserted that the plaintiff could not have consented to the agreement because of the agreement's standard form and small

7

print, and the potentially unequal bargaining positions of the parties. Id. at 4, 10. Once a party to an agreement questions consent, as Gautier does here, "the party seeking to invalidate the contract as adhesionary must then demonstrate the non-drafting party either did not consent to the terms in dispute or his consent was vitiated by error," rendering the contract unenforceable. Id. at 10.

In reviewing whether an arbitration agreement is unenforceably adhesionary, the Louisiana Supreme Court considers four factors: "(1) the physical characteristics of the arbitration clause, (2) the distinguishing features of the arbitration clause, (3) the mutuality of the arbitration clause, in terms of the relative burdens and advantages conferred by the clause upon each party, and (4) the relative bargaining strength of the parties." Sutton Steel & Supply, Inc. v. BellSouth Mobility, Inc., 2007-146 (La. App. 3 Cir. 12/12/07); 971 So.2d 1257, 1266 (citing Aguillard, 908 So.2d at 16-17). In considering the physical characteristics of the agreement, courts consider whether the print is "unreasonably small," the length of the document, and whether the text was organized into paragraphs under headings. Aguillard, 908 So.2d at 16; Sutton Steel, 971 So.2d at 1266. When considering the distinguishing features of the arbitration agreement, the Aguillard court considered whether the arbitration provisions were concealed in any way. Id. The arbitration agreement between Bactes

8

and Gautier was presented as an exhibit to the employee handbook, but is a stand-alone document. It is entitled "1004 Arbitration Agreement." The title is bold at the top of the page, and is in larger print than the text. Gautier wrote her name and her social security number at the top of the page, right next to the title. The document is two pages long, and the second page is also entitled "1004 Arbitration Agreement." Gautier signed and dated the agreement on the second page below the text. The last paragraph is in all capital letters, states that the employee executes the agreement by signing it, and that the agreement will be controlling throughout employment. The agreement is understandable and clearly delineates its terms. It is not concealed in any way; the title clearly indicates the subject of the agreement.

The mutuality requirement considers whether the both parties are bound to arbitration. Id. Bactes and Gautier are both required to arbitrate any disputes. And lastly, courts consider whether the agreement was so critical that the plaintiff was compelled to sign it, and could not have refused employment. See id. at 17. There are no facts presented to suggest that Bactes abused its position as Gautier's employer, or that Gautier was somehow vulnerable to Bactes for any reason. Simply because one party employs another does not make such an agreement unconscionable on its face. Accordingly, the plaintiff has failed to show that the agreement between Bactes and Gautier is invalid.

The plaintiff does not dispute that the second consideration in the first inquiry, which asks whether the dispute in questions falls within the scope of the arbitration agreement, is satisfied. The agreement states, "Employee and BACTES agree that arbitration shall be the exclusive forum for resolving **all disputes** arising out of or involving Employee's employment with BACTES or the termination of that employment," with a few exceptions listed, none of which are at issue here. Because Bactes has demonstrated that there was a valid agreement in place and that the dispute falls within the scope of the agreement, Bactes has satisfied the first inquiry, showing that they agreed to arbitrate the dispute at issue.

As to the second inquiry, the parties have pointed to no statute or policy, and this Court is aware of none, that would render the claims nonarbitrable. Gautier does not claim that the dispute is nonarbitrable, or address this inquiry at all. Consequently, the FAA requires this Court to compel arbitration between Bactes and Gautier.

C.

The arbitration agreement was only between Bactes and Gautier; Paulus is a non-signatory. However, he still seeks to compel arbitration because the claims against him are intertwined

with those against Bactes. Gautier does not oppose arbitration on the basis that Paulus is a non-signatory.[3]

While arbitration typically binds the signatories to the agreement, the Fifth Circuit has held that "a party to an arbitration agreement may be equitably estopped from litigating its claims against non-parties in court and may be ordered to arbitration." Brown v. Pacific Life Ins. Co., 462 F.3d 384, 398 (5th Cir. 2006). "[A] non-signatory to an arbitration agreement can compel arbitration: (1) when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against a non-signatory; or (2) when the signatory raises allegations substantially interdependent and concerted misconduct by both the non-signatory and one or more signatories to the contract." Id. (citing Grigson v. Creative Artists Agency, LLC, 210 F.3d 524, 528 (5th Cir. 2000)). This rule "makes sense because the parties resisting arbitration had expressly agreed to arbitrate claims of the very type that they asserted against the nonsignatory." Bridas S.A.P.I.C. v. Gov't of Turkm., 345 F.3d 347, 361 (5th Cir.2003);

---

[3] In fact, Gautier objects to Paulus' statement that he is a non-signatory because Paulus "was the one who recruited Ms. Gautier, hired her, and later defrauded her out of her owed commissions." Paulus is a non-signatory to the agreement because he was not a party to it. The only parties that participated in the arbitration agreement are Bactes and Gautier. Paulus was not listed or referenced in any manner, and he did not sign the agreement.

11

see Ryan v. Thunder Restorations, Inc., No. 09-3261, 2011 WL 2680482, at *8 (E.D. La. July 8, 2011).

Paulus can compel arbitration under the second prong because Gautier alleges "substantially interdependent and concerted misconduct" between Bactes, a signatory, and Paulus, a non-signatory. The allegations include substantially interdependent and concerted misconduct when the claims "against the nonsignatory defendant depends in some way on the acts of the signatory defendant." Ryan, 2011 WL 2680482, at *8. Here, the claims against Bactes and Paulus are inextricably tied. Gautier claims that Paulus sexually harassed and discriminated against her, and that Bactes knew of his conduct and ratified it. The claims against Bactes are predicated on the claims against Paulus. Had Paulus been a signatory, the claims against him would fall within the scope of the arbitration agreement. Paulus is entitled to compel arbitration under the doctrine of equitable estoppel.

D.

Local Rule 7.5 of the Eastern District of Louisiana requires that memoranda in opposition to a motion be filed no later than eight days before the noticed submission date. No memoranda in opposition to the defendants' motions to compel arbitration, set for submission on August 22, 2018, has been filed. Accordingly, the motion is deemed to be unopposed, and further, it appearing to

the Court that the motion has merit,[4] the defendants are also entitled to compel arbitration for Barcelona's claims.

E.

Lastly, Bactes moves to dismiss the case while it is subject to arbitration, where Paulus seeks a stay or dismissal. Gautier does not weigh in on whether the case should be stayed or dismissed if the Court compels arbitration. Whether to stay or dismiss a case in which the claims are subject to arbitration is generally within the district court's discretion. Apache Bohai Corp., LDC v. Texaco China, B.V., 330 F.3d 307, 311 n.9 (5th Cir. 2003). However, 9 U.S.C. § 3 provides that when a suit is brought "upon any issue referable to arbitration under an agreement in writing for such arbitration," the Court, upon being satisfied that the issue

---

[4] Barcelona was not a signatory to the arbitration agreement. But again, the Fifth Circuit has held that the doctrine of equitable estoppel allows non-signatories to be compelled to arbitration when their claims are "intertwined" with claims brought by signatories. See Grigson, 201 F.3d at 527. The case literature contemplates non-signatories compelling arbitration, and in this situation, a signatory, Bactes, is compelling arbitration against a non-signatory, Barcelona. But Barcelona's claims that he lost society and companionship of his wife due to the harassment and discrimination she faced are wholly dependent on Gautier's claims, which are within the scope of the arbitration agreement. The doctrine still applies because Barcelona's claims are dependent on the claims brought by a signatory that are within the scope of the arbitration agreement. If Barcelona was a signatory, his claims would be within the scope of the agreement. Allowing Barcelona to proceed with his claims in this Court, while Gautier's claims were arbitrated in California, would be inefficient, confusing, and undermine the purpose of the arbitration agreement.

involved is indeed referable to arbitration under the agreement, "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3; see Waste Mgmt., Inc. v. Residuos Industriales Multiquim, S.A. de C.V., 372 F.3d 339, 341-42 (5th Cir. 2004). A stay is warranted here.

Accordingly, IT IS ORDERED: that the Bactes' and Paulus' motions to compel arbitration are GRANTED in part, to the extent it seeks to compel arbitration, and DENIED in part, to the extent Bactes and Paulus seek dismissal rather than a stay.[5] The case is stayed pending the completion of arbitration and this case is closed pending completion of arbitration.

New Orleans, Louisiana, August 28, 2018

MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

---

[5] Because the Court has granted the motions to compel, it need not reach the alternative Rule 12(b)(6) motions to dismiss.